**FILED**

2011 Mar-01  PM 02:40
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| SYNOVUS BANK, | ) |
|       **Plaintiff,** | ) |
| | ) |
| **v.** | )    **2:11-cv-00715-SLB** |
| | ) ***JURY TRIAL REQUESTED*** |
| PLASH ISLAND RESORT, LLC, KEITH | ) |
| ROTENBERRY; LEWIS M. LOCKHART; | ) |
| RICHARD D. ROWE; NIOLAOS MANKIDES; | ) |
| RICKEY L. LOCKHARD; WILLIAM R. IVEY; | ) |
| MICHAEL W. McCAIN; CHRISTOPHER | ) |
| ANDREW YARBOROUGH; ESTATE OF | ) |
| GARY L. MARCRUM, SR.; DONA S. | ) |
| MARCRUM, ADMINISTRATOR; and | ) |
| MARCRUM DEVELOPMENT, LLC, | ) |
|       **Defendants.** | ) |

| | |
|---|---|
| PLASH ISLAND RESORT, LLC, | ) |
|       **Defendant/Third Party Plaintiff,** | ) |
| **v.** | ) |
| | ) |
| BP P.L.C.; BP AMERICA INC.; BP PRODUCTS | ) |
| NORTH AMERICA INC.; BP AMERICA | ) |
| PRODUCTION COMPANY; BP EXPLORATION | ) |
| & PRODUCTION INC.; ANADARKO | ) |
| PETROLEUM CORPORATION; ANADARKO | ) |
| E&P COMPANY, LP; MOEX OFFSHORE | ) |
| 2007, LLC; TRANSOCEAN LTD.; | ) |
| TRANSOCEAN DEEPWATER, INC.; | ) |
| TRANSOCEAN OFFSHORE DEEPWATER | ) |
| DRILLING, INC.; TRANSOCEAN HOLDINGS, | ) |
| LLC; TRITON ASSET LEASING GMBH; | ) |
| HALLIBURTON ENERGY SERVIES, INC.; | ) |
| M-I, LLC; DRIL-QUIP, INC.; CAMERON | ) |
| INTERNATIONAL CORPORATION *F/K/A* | ) |
| COOPER CAMERON CORPORATION; | ) |
| JOHN AND JANE DOES A-Z; and | ) |
| CORPORATIONS A-Z | ) |
|       **Third Party Defendants** | |

## DEFENDANT DRIL-QUIP, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, AND SUBJECT TO THAT MOTION, MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure and the Oil Pollution Act of 1990, 33 U.S.C. § 2701 et seq. ("OPA"), Defendant Dril-Quip, Inc. ("Dril-Quip") moves for an order dismissing Defendant/Third Party Plaintiff's Complaint in this case for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim upon which relief can be granted against Dril-Quip. Defendant/Third Party Plaintiff will be referred to as "Plash Island."

First, the Court should dismiss the Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) because Dril-Quip's only connection to this case is that it manufactured the subsea wellhead system used in connection with BP P.L.C's operations on the *Deepwater Horizon* and provided a service technician to assist with the wellhead system's installation. Dril-Quip manufactured the wellhead system in Texas and assisted with its installation off the coast of Louisiana. Dril-Quip's involvement in the operations aboard the *Deepwater Horizon* thus has no connection to the state of Alabama. Dril-Quip does not maintain an office in Alabama, own any property in Alabama, has no employees in Alabama, does not regularly sell any products to the citizens of Alabama, does not regularly solicit business in Alabama, does not derive substantial revenue from the State of Alabama, and does not target Alabama residents with any marketing or sales materials. Thus, as Dril-Quip has not purposefully directed any actions toward Alabama and does not have continuous and systematic general business contacts with that state, this Court lacks both specific and general personal jurisdiction.

Second, the Court should dismiss Plash Island's claims against Dril-Quip under Rule 12(b)(6) because it has not pled sufficient facts to raise a reasonable expectation that it has a right to relief. Its pleadings against Dril-Quip do not meet the requirements of *Ashcroft v. Iqbal*, 556 U.S. ____, 129 S.Ct. 1937, 1949 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Third, the Court should dismiss Plash Island's claims pursuant to Rule 12(b)(1) because the Oilfield Pollution Act, 33 U.S.C. §2701 *et. seq.* ("OPA") controls its common law claims, and it has failed to comply with the presentment requirement of the OPA. Plash Island thus lacks standing to pursue its claims, mandating dismissal. Additionally, Dril-Quip is not a proper defendant under the OPA, mandating dismissal under Rule 12(b)(6).

Fourth, even if the OPA does not apply, the economic loss rule would bar Plash Island's claims under any other body of law which could be a candidate to govern their claims. Thus, no matter which choice of law decision the Court ultimately makes, it should dismiss Plash Island's claims under Rule 12(b)(6).

Fifth, Plash Island has failed to state a claim for maritime or other negligence against Dril-Quip. The causal connection between the alleged negligence and the resulting harm is too attenuated to be foreseeable.

Sixth, Plash Island has failed to state a common law strict liability claim for abnormally dangerous activity under Alabama law. The harm alleged is not the type that arguably makes the activity abnormally dangerous.

Seventh, Plash Island has failed to state a product defect claim against Dril-Quip. The allegations do not state a legally sufficient basis for legal cause in a product defect case.

Finally, and in the alternative, in the event the Court does not dismiss Plash Island's claims, Dril-Quip moves for a more definite statement under Rule 12(e), specifying a theory against Dril-Quip and the facts that support it.

The grounds for this motion are set forth in detail in the accompanying supporting memorandum of law.

WHEREFORE, Defendant Dril-Quip respectfully prays for an order dismissing Plash Island's Third-Party Complaint in this action, or, in the alternative, requiring a more definite statement pursuant to Rule 12(e).

Respectfully Submitted,

/s/ Neal D. Moore, III
Neal D. Moore, III
Larry Young, Jr.
*Attorneys for Third Party Defendant, Dril-Quip, Inc.*

OF COUNSEL:
FERGUSON, FROST & DODSON, LLP
2500 Acton Road, Suite 200
Birmingham, Alabama 35243
(205) 879-8722 – telephone
(205) 879-8831 – telecopier

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been served on all counsel of record, according to the Federal Rules of Civil Procedure, this 1st day of March, 2011, addressed as follows:

M. Shane Lucado
Lucado Law Firm LLC
One Perimeter Park South, Suite 125 S
Birmingham, Al. 35243
Fax No. (205) 278-0030

*Attorney for Third-Party Plaintiff*

John M. Johnson, Esq.
Adam K. Peck, Esq.
William H. Brooks, Esq.
Marchello D. Gray, Esq.
LIGHTFOOT, FRANKLIN & WHITE, LLC
400 North 20th Street
Birmingham, Alabama 35203

Richard C. Godfrey, Esq.
James Andrew Langan, Esq.
Kristopher Ritter, Esp.
KIRKLAND & ELLIS, LLP
300 North LaSalle
Chicago, Illinois 60654

Jeffrey Clark
Aditya Bamzai
KIRKLAND & ELLIS, LLP
655 Fifteenth St., N.W.
Washington, DC 20005-5793

*Attorneys for BP, PLC, BP America, Inc.,*
*BP Exploration & Production, Inc., BP*
*America Production Company, and BP*
*Products North America, Inc.*

Joel M. Kuehnert, Esq.
Sid J. Trant, Esq.
R. Thomas Warburton, Esq.
BRADLEY, ARANT, BOULT,
 CUMMINGS, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203

James J. Dragna, Esq.
BINGHAM MCCUTCHEN
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106

Ky E. Kirby, Esq.
Michael B. Wigmore, Esq.
Warrant Anthony Fitch, Esq.
BINGHAM MCCUTCHEN
2020 K Street, NW
Washington, DC 2006-1806

*Attorneys for Anadarko Petroleum Corporation,
Anadarko E&P Company, LP, MOEX Offshore
2007 LLC, and MOEX USA Corporation*

Blane H. Crutchfield, Esq.
Douglas L. McCoy, Esq.
HAND ARENDALL, LLC
Post Office Box 123
Mobile, Alabama 36601

*Attorneys for Transocean Offshore Deepwater
Drilling, Inc., Transocean Deepwater Inc., Transocean
Holdings, LLC and Triton Asset Leasing GMBH*

Hugh E. Tanner
MORGAN, LEWIS & BOCKIUS, L.L.P.
1000 Louisiana
Suite 4000
Houston, Texas 77002-5007

*Attorneys for M-I, LLC*

                                    /s/ Neal D. Moore, III
                                    OF COUNSEL

## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| SYNOVUS BANK,<br>      Plaintiff, | )<br>)<br>) |
| v. | )<br>)    **2:11-cv-00715-SLB** |
| | ) ***JURY TRIAL REQUESTED*** |
| PLASH ISLAND RESORT, LLC, KEITH<br>ROTENBERRY; LEWIS M. LOCKHART;<br>RICHARD D. ROWE; NIOLAOS MANKIDES;<br>RICKEY L. LOCKHARD; WILLIAM R. IVEY;<br>MICHAEL W. McCAIN; CHRISTOPHER<br>ANDREW YARBOROUGH; ESTATE OF<br>GARY L. MARCRUM, SR.; DONA S.<br>MARCRUM, ADMINISTRATOR; and<br>MARCRUM DEVELOPMENT, LLC,<br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

| | |
|---|---|
| PLASH ISLAND RESORT, LLC,<br>      Defendant/Third Party Plaintiff,<br>v. | )<br>)<br>)<br>) |
| BP P.L.C.; BP AMERICA INC.; BP PRODUCTS<br>NORTH AMERICA INC.; BP AMERICA<br>PRODUCTION COMPANY; BP EXPLORATION<br>& PRODUCTION INC.; ANADARKO<br>PETROLEUM CORPORATION; ANADARKO<br>E&P COMPANY, LP; MOEX OFFSHORE<br>2007, LLC; TRANSOCEAN LTD.;<br>TRANSOCEAN DEEPWATER, INC.;<br>TRANSOCEAN OFFSHORE DEEPWATER<br>DRILLING, INC.; TRANSOCEAN HOLDINGS,<br>LLC; TRITON ASSET LEASING GMBH;<br>HALLIBURTON ENERGY SERVIES, INC.;<br>M-I, LLC; DRIL-QUIP, INC.; CAMERON<br>INTERNATIONAL CORPORATION *F/K/A*<br>COOPER CAMERON CORPORATION;<br>JOHN AND JANE DOES A-Z; and<br>CORPORATIONS A-Z<br>      **Third Party Defendants** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT DRIL-QUIP, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND, SUBJECT TO THAT MOTION, MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.    SUMMARY

This lawsuit arises out of an oil spill that occurred while the *Deepwater Horizon*, a mobile drilling unit owned and operated by Transocean Ltd., was drilling the Macondo well for BP, P.L.C., the lessee.  Dril-Quip, Inc. ("Dril-Quip") manufactured the subsea wellhead and certain related equipment (the "Subsea Wellhead System") used on the Macondo well and provided a service technician onboard the *Deepwater Horizon* to assist with the installation of the Subsea Wellhead System.

Defendant/Third Party Plaintiff ("Plash Island") has filed a Third Party Complaint (the "Complaint").  The Complaint makes only one allegation specifically against Dril-Quip, and that claim is stated in conclusory terms, accompanied by no facts supporting the claim.  The Court should dismiss the Complaint against Dril-Quip under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) for these reasons:

- The Court lacks personal jurisdiction over Dril-Quip.  Dril-Quip's only connection to this case is that it manufactured the Subsea Wellhead System in Texas and provided a service technician to assist with the installation of the Subsea Wellhead System onboard the *Deepwater Horizon*.  Dril-Quip has not acted in a manner that was purposefully directed toward Alabama, and the Court should dismiss this case pursuant to Rule 12(b)(2);

- The Complaint fails to plead any facts against Dril-Quip and thus fails to satisfy the standard set forth in *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) and *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 570, (2007), mandating dismissal of all of Plash Island's claims against Dril-Quip under Rule 12(b)(6);

- The Oilfield Pollution Act of 1990, 33 U.S.C. § 2701 et. seq., (the "OPA") preempts Plash Island's claims, and it has failed to comply with the presentment requirement of the OPA.  Plash Island thus lacks standing to pursue its claims, and the Court

should dismiss it under Federal Rule of Civil Procedure 12(b)(1).  Moreover, Dril-Quip is not a "responsible party" under the OPA, an additional reason why the Court should dismiss Plash Island's claims pursuant to Rule 12(b)(6);

- The economic loss rule bars Plash Island's claims under any law that could conceivably apply to this case, and the Court should dismiss the claims under to Rule 12(b)(6);

- Plash Island has failed to state a claim for negligence against Dril-Quip.  As a matter of law, the relation between Dril-Quip's activities and the injuries asserted by Plash Island is too attenuated to sustain a negligence claim against Dril-Quip.

- Plash Island has failed to state a claim for strict liability for abnormally dangerous activity against Dril-Quip. Plash Island has not alleged the type of harm that arguably makes the activity abnormally dangerous.

- Plash Island has failed to state a claim for a defective product against Dril-Quip.  As a matter of law, Plash Island's allegations do not state a legally sufficient basis for showing that Dril-Quip's product proximately caused harm to Plash Island.

In the alternative, Dril-Quip moves for a more definite statement under Rule 12(e), specifying a theory or theories of liability on the part of Dril-Quip and the facts that support it/them.

## B.    BACKGROUND

Dril-Quip manufactured the Subsea Wellhead System used on the Macondo well, which was located forty miles off the coast of Louisiana.[1]  Dril-Quip manufactured the Subsea Wellhead System in Texas and provided a service technician onboard the *Deepwater Horizon* to assist with the installation of the Subsea Wellhead System.[2]  Dril-Quip did not have any other role on the *Deepwater Horizon*.[3]

---

[1] Exhibit A, Affidavit of Jerry Brooks at ¶3; Complaint at ¶¶1, 30.

[2] *Id.*

[3] *Id.*; Complaint at ¶¶30.   Paragraphs 297-306 state conclusions intended to suggest liability, causation, and damages.

Dril-Quip did not manufacture any product or perform any services related to this lawsuit in Alabama.[4]  Dril-Quip does not own any property in Alabama, has no employees in Alabama, does not regularly sell any products to citizens of Alabama, does not provide any regular services to citizens of Alabama, does not regularly solicit business or engage in a persistent course of conduct in Alabama, does not derive substantial revenue from the State of Alabama, and does not specifically target Alabama residents with any marketing or sales materials.[5]

## C.   ARGUMENT AND AUTHORITIES

### I.   The Court Lacks Personal Jurisdiction Over Dril-Quip

Alabama's long arm statute authorizes personal jurisdiction over a non-resident corporation to the extent authorized by the Due Process Clause of the U.S. Constitution. Ala. R. Civ. P. Rule 4.2(b); *Ex parte DBI, Inc.,* 23 So.3d 635, 643 (Ala. 2009) (citing *Sieber v. Campbell*, 810 So.2d 641, 644 (Ala.2001)).  Under the federal constitution, jurisdiction may be general or specific.

To permit the exercise of specific jurisdiction, there must first exist "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).  Secondly, the defendant's contacts with the forum must relate to the plaintiff's cause of action or have given rise to it. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985).  If a plaintiff seeks to base jurisdiction on an out-of-state activity, the out-of-state

---

[4]Ex. A at ¶3.

[5]*Id.* at ¶2.

activity alleged must consist of more than "mere untargeted negligence." *Calder v. Jones*, 465 U.S.783, 789-90 (1984).

"General personal jurisdiction arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated. The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000). The Court lacks both general and specific jurisdiction over Dril-Quip.

Dril-Quip is a Delaware corporation with its principal place of business in Texas.[6] This case involves an oil spill that occurred off the coast of Louisiana.[7] With respect to general jurisdiction, Dril-Quip:

- Does not maintain an office in Alabama;

- Does not own any property in Alabama;

- Has no employees in Alabama;

- Does not regularly sell any products to citizens of Alabama nor provide any regular services to citizens of Alabama. Dril-Quip only does business with Alabama residents on an occasional and sporadic basis;

- Does not regularly solicit business or engage in a persistent course of conduct in Alabama;

- Does not derive substantial revenue from the State of Alabama; and

- Does not specifically target Alabama residents with any marketing or sales materials.[8]

---

[6] Complaint at ¶30.

[7] *Id.* at ¶1.

As for specific jurisdiction, Dril-Quip's only connection to this case is that it manufactured the Subsea Wellhead System and provided a service technician to assist with the installation of the system.[9] None of these contacts occurred in Alabama. Dril-Quip manufactured the Subsea Wellhead System in Texas and helped install it in the Gulf of Mexico off the coast of Louisiana.[10] Dril-Quip thus has no contacts with the State of Alabama that relate to this case.

Even if Plash Island showed that Dril-Quip had some attenuated contact with Alabama related to this case, this contact would not constitute a "purposeful availment" of the protections of the laws of the State of Alabama and the Court would still lack jurisdiction. *Hanson*, 357 U.S. at 253. The only connection the Complaint even arguably alleges Dril-Quip has with Alabama is that Dril-Quip contributed in an unspecified way to an oil spill and some of that oil traveled over a hundred miles and came into contact with Plash Island's property on the coast of Alabama.[11] Even if this were true, this is not a purposeful contact with Alabama that would constitute a "purposeful availment."

The Alabama Supreme Court, interpreting the same federal constitutional standards, recently found a lack of jurisdiction in an analogous case. In *Ex Parte Hospital Espanol De Auxillio Munto De Puerto Rico, Inc.*, 945 So. 2d 437 (Ala. 2006), the plaintiff alleged that the defendant placed a kidney infected with Hepatitis C into the stream of commerce and

---

[8] Ex. A at ¶2,3.

[9] *Id.*; Complaint at ¶30.

[10] Ex. A at ¶3.

[11] As discussed below, the Complaint only mentions Dril-Quip one time, but lumps it together with dozens of other defendants it designated the "Drilling Defendants." It makes vague allegations against the Drilling Defendants as a group but does not allege that any of these defendants had any purposeful contacts with Alabama.

6

failed to properly test the kidney. *Id.* at 438. The defendant gave the kidney to a third party, which brought the kidney to Alabama for transplant. *Id.* at 439. The court ruled that it lacked personal jurisdiction over the defendant because the evidence did "not establish a nexus between [the defendant] and Alabama arising out of an action that [the defendant] purposefully directed toward [Alabama]." *Id.* at 447. The Court reasoned that the defendant did not exercise any control over where the kidney went after it gave it to a third party, and thus did not purposefully place the kidney into Alabama.

The same reasoning applies with even greater force in this case. Dril-Quip manufactured a product and then assisted with its subsea installation in the Gulf of Mexico off the coast of Louisiana, not in Alabama.[12] Dril-Quip's product did not reach Alabama. Dril-Quip thus did nothing to reach voluntarily into the State of Alabama, and there is no basis for personal jurisdiction over Dril-Quip in Alabama. *See also Duke v. Young*, 496 So.2d 37, 39, 40 (Ala.1986) (quoting *Calder v. Jones*, 465 U.S.783, 789-90 (1984) ("mere untargeted negligence" insufficient to establish personal jurisdiction)). The Court should therefore dismiss the Complaint against Dril-Quip pursuant to Rule 12(b)(2).

## II. The Complaint Fails to State a Claim Against Dril-Quip Because It Fails to Allege Facts Sufficient to Establish Any Cause of Action

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). The "complaint must contain sufficient factual material accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citing

---

[12] Ex. A at ¶3.

*Twombly*, 550 U.S. at 570)); *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009)(allegations must push claim past "conceivable" to "plausible").   These "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56.  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010)(quoting *Iqbal,* 556 U.S. at ___, 129 S. Ct. at 1949).  Under the standard set forth in *Twombly*, a complaint must plead "enough fact[s] to raise a reasonable expectation" that a plaintiff has a right to relief.  *See* 550 U.S. at 557.

The Complaint pleads no facts tending to show liability, causation or damage that implicate Dril-Quip.  Indeed, the Complaint only mentions Dril-Quip five times: in the parties section, as the "provid[er of] wellhead systems for *Deepwater Horizon*" and, therefore, a "Drilling Defendant";[13]  as a party "aware of the decision to utilize the 'long string' [casing] wellhead";[14] as a party owing[15] and breaching[16] a duty of care to Plash Island; and as a "common law strict liability for manufacturing defect" defendant.[17]

---

[13] *Id.* at ¶30-31.

[14] *Id.* at ¶ 85.

[15] *Id.* at ¶226.

[16] *Id.* at ¶235.

[17] *Id.* at ¶¶ 297-306.

The majority of the Complaint's allegations related to the Defendants are directed at "Defendants" or "Drilling Defendants."[18]   In other paragraphs, the Complaint alleges that specific Defendants committed certain acts but never alleges that Dril-Quip committed any specific act.   Other than these collective allegations, the Complaint does not allege a single fact that would tend to show that Dril-Quip did anything or failed to do anything that led to Plash Island's alleged injuries.   In Count VI, Plash Island alleges, in conclusory fashion, some of the elements of strict liability for a manufacturer's defective product.[19]

Allegations that lump multiple defendants together without specifying which defendant did what do not satisfy federal pleading standards.  *Cruz v. Cinram Int'l, Inc.*, 574 F. Supp. 2d 1227, 1233 (N.D. Alabama 2008); *see also Kester v. Zimmer Holdings, Inc.*, No. 2:10-cv-00523, 2010 WL 2696467, at *12 (W.D. Pa. June 16, 2010) (collectively referring to "Defendants" insufficient under *Twombly*).   The Eleventh Circuit has stated "[t]his court has addressed the topic of shotgun pleadings on numerous occasions in the past, often at great length and always with great dismay." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 n. 9 (11th Cir. 2002); *see also Cook v. Randolph Cty., Ga.*, 573 F.3d 1143, 1151 (11th Cir. 2009)(citing cases); *Carrel v. Godley*, No. 10-10766, 2010 WL 4910167, *2 (11th Cir., Dec. 2, 2010).   "The defining characteristic of a shotgun complaint is that it 'fails to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading.'" *Giscombe v. ABN Amro Mortg. Corp., Inc.*, 680 F.Supp. 2d 1378, 1380 (N.D. Ga. 2010)(quoting *Beckwith v. Bellsouth Telecomms., Inc.*, 146 Fed. Appx. 368, 371 (11th Cir. 2005)).

---

[18] *See, e.g., id.* at ¶¶61, 66-71, 74, 86-88, 91-92, 99, 101-103.

[19] *Id.* at ¶¶297-306.

This case is no different.  Plash Island's "shotgun" complaint fails to plead any facts specific to Dril-Quip.  It is thus impossible to ascertain what Dril-Quip did or failed to do that caused Plash Island's injuries.  Specifically, the Complaint fails to allege any facts that would establish any elements of Plash Island's causes of action:

- *Negligence*—The Complaint fails to specify what duty Dril-Quip owed to Plash Island, how it breached that duty, or how that breach caused Plash Island's damages;

- *Negligence Per Se*—The Complaint fails to specify what statute Dril-Quip violated, how it violated the statute, or how that violation caused Plash Island's damages;

- *Strict Liability for Engaging in an Ultra-Hazardous Activity*—The Complaint only states that Dril-Quip "was involved with providing wellhead systems."[20]  It is unclear how or why providing wellhead systems is an ultra-hazardous activity, or how engaging in that activity caused Plash Island's damages;

- *Private Nuisance*—The Complaint fails to allege how Dril-Quip contributed to the oil spill or how Dril-Quip could have prevented the oil spill.

The Court should therefore dismiss the Complaint against Dril-Quip for failure to state a claim.

## III.   Choice of Law

Either federal maritime law or the Outer Continental Shelf Lands Act, 43 U.S.C. 1331 et. seq. ("OCSLA") applies to this case.  Federal maritime law may apply to this claim because  Plash Island alleges that Dril-Quip committed a tort on navigable federal waters.[21]

---

[20]*Id.* at ¶30.

[21]"The historic view of this Court has been that the maritime tort jurisdiction of the federal courts is determined by the locality of the accident and that maritime law governs only those torts occurring on the navigable waters of the United States."  *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 205 (1971).  The *Deepwater Horizon* is a "mobile drilling unit" that may qualify as a vessel under general maritime law.  *See Manuel v. P.A.W. Drilling & Well Serv., Inc.*, 135 F.3d 344, 351-352 (5th Cir. 1998) (holding that drilling craft was a vessel because it was a "highly mobile unit" deployed to nineteen different sites over two years); *Colomb v. Texaco, Inc.*, 736 F.2d 218, 221 (5th Cir. 1984) (finding submersible drilling barge to be a "vessel" because it was "highly mobile" due to routine relocation).  Plaintiff acknowledges that the *Deepwater Horizon* "was situated approximately 40 miles southeast of the Louisiana coast" and that the drill site was "a location on the outer continental shelf in the Gulf of Mexico." (Complaint ¶¶ 1, 42).

If federal maritime law does not apply, then the OCSLA applies.[22]   OCSLA generally applies to "any operation conducted on the outer Continental Shelf which involves exploration, development, or production of minerals . . . ." 43 U.S.C. § 1349(b)(1)(A). In either event—i.e., whether federal maritime law or the OCSLA applies—the OPA will govern the result in this case. But even if it did not, both the federal maritime law and the OCSLA would bar Plash Island's claims pursuant to the economic loss rule.

## IV.   THE OPA Preempts and Bars Plash Island's Claims

### a.   The OPA Governs Plash Island's Claims

The OPA preempts Plash Island's economic loss claims regardless of whether federal maritime law or the OCSLA applies.  If federal maritime law applies, the OPA scheme for oil spill liability and payment of claims is explicitly exclusive and precludes any other federal common law cause of action for economic losses resulting from an oil spill. The OPA mandates that, *"[n]otwithstanding any other provision or rule of law,* and subject to the provisions of this Act, each responsible party for a vessel or a facility from which oil is

---

Federal admiralty law applies when the "location test" and the "connection-to-maritime-activity" test are satisfied. *In re Katrina Canal Breaches Litig.*, 324 Fed. Appx. 370, 376 (5th Cir. 2009). The "location test" requires the tort to have occurred on navigable water or, for an injury suffered on land, to have been caused by a vessel on navigable water. *Id.* Plaintiff alleges that the torts at issue occurred on navigable water. The allegedly negligent and ultrahazardous acts occurred *on* the *Deepwater Horizon* while it was afloat in navigable waters in the Gulf of Mexico.

Application of the "connection-to-maritime-activity" test also may demonstrate that maritime law applies. Notably, "[o]il and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce." *Theriot v. Bay Drilling Corp.*, 791 F.2d 527, 538–39 (5th Cir. 1986); *Pippen v. Shell Oil Co.*, 661 F.2d 378, 384 (5th Cir. 1981). Further, courts have concluded that oil spill cases involving seagoing vessels that spill oil directly into navigable waters are connected to maritime activity, and claims arising out of such oil spills (at least prior to the enactment of OPA) fall under general maritime law. *In re Exxon Valdez*, 767 F. Supp. 1509, 1512–14 (D. Alaska 1991)(damage claims resulting from oil spill cognizable under maritime law because they were "caused by a vessel on navigable water"); *Puerto Rico v. SS Zoe Colocotroni*, 628 F.2d 652, 672 (1st Cir. 1980), *cert. denied*, 450 U.S. 912 (1981).

[22]OCSLA may apply if the Court determines that the *Deepwater Horizon* is not a "vessel" for the purposes of this case, but rather is a drilling rig that was connected to the seabed. 43 U.S.C. § 1333(a)(2).

discharged" is strictly "liable" to pay specified "damages." 33 U.S.C. § 2702( a) (emphasis added).

The legislative history makes clear that Congress consciously designed an exclusive liability and payment system when passing the OPA. "It is important to note that following enactment, liability and *compensation for oil pollution* removal costs and *damages* caused by a discharge from a vessel or facility (as defined in this [bill]) *will be determined in accordance with this [legislation]."* H.R. Conf. Rep. No. 101-653, 1990 U.S. Code Cong. & Adm. News ("1990 Cong. & Ad. News") 779, 802, repeating the language of S. Rep. No. 101-94, 1990 Cong. & Ad. News 722, 746-47 ("S. Rep.") (emphasis added). The OPA was meant "to create a *single Federal law providing* cleanup authority, penalties, and *liability for oil pollution."* S. Rep., 1990 Cong. & Ad. News at 730 (emphasis added).

The OPA remedies preclude any claim for oilfield pollution that is based on federal maritime common law.  In *Gabarick v. Laurin Maritime (America) Inc.,* 623 F. Supp. 2d 741 (E.D. La. 2009), the defendants argued that the OPA pre-empted all claims for economic loss under 33 U.S.C. 2702(b). The plaintiffs argued against statutory preemption, in part relying upon a savings clause in the OPA which provides that "[e]xcept as otherwise provided in this Act, this Act does not affect (I) admiralty and maritime law . . . . " 33 U.S.C. § 275I(e).  But as Judge Lemelle explained in rejecting that argument, this clause simply means that the OPA "does not affect admiralty and maritime law *except as provided in the Act." Id.* at 746 (emphasis added).  Because the Act does in fact impose strict liability for specific types of damages, require presentment of claims for those damages, and prescribe who can be sued and when, it necessarily affects admiralty and maritime law in

12

those respects: "the plain language of the statute indicates its mandatory and exclusive nature with respect to its covered damages." *Id.*; *see also In re Settoon Towing Co.*, No. 07-1263, 2009 WL 4730971, at *3 (E.D. La. Dec. 04, 2009).

The conclusion in *Gabarick* was grounded in Supreme Court precedent interpreting the preclusive effect of other similarly comprehensive statutory remedial schemes. When Congress enacts a comprehensive remedial statute such as the OPA, the new federal remedies replace pre-existing common law or maritime causes of action: "the underlying legal basis" for such causes of action are "pre-empted by [the new federal] statute." *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 22 (1981). As Judge Lemelle further explained in *Gabarick*, "[w]hen considering an issue similar to the one *sub judice*, the Supreme Court recognized the preemption of federal common law and general maritime law by Congress's comprehensive legislation in the area of water pollution." *Gabarick*, 623 F. Supp. 2d at 747.

This analysis does not change if OCSLA applies. The U.S. Supreme Court has explained that OCSLA only borrows state law to the extent there is a "gap" in federal law:

> All law applicable to the Outer Continental Shelf is federal law, but to fill the gaps in the coverage of federal law, OCSLA borrows the applicable and not inconsistent laws of the adjacent States as surrogate federal law.

*Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 480-81 (1981) (internal quotations omitted) (interpreting 43 U.S.C. § 1333(a)(2)). To the extent there is not a "gap" in federal law, OCSLA does not borrow any state laws. *Id.* In the instant case, there is no gap in federal law because the OPA specifically and comprehensively addresses claims for economic loss damages based on an oil spill. *See Mobil Oil Corp. v. Higginbotham*, 436

13

U.S. 618, 625 (1978) (noting that the Death on the High Seas Act provided the exclusive federal remedy for a maritime death case). There is thus no basis to "borrow" any other state's law in this case.

The Complaint seeks damages for economic loss based on an oil spill and thus clearly falls within the exclusive purview of the OPA. Plash Island's federal maritime common law claims and any claims governed by OCSLA are thus preempted by the OPA, and Plash Island can only recover under the OPA.

> **b.  Plash Island Lacks Standing to Recover Under the OPA Because It Has Not Complied with the OPA's Presentment Requirement**

The OPA sets forth a mandatory procedure by which a damaged party is to invoke a responsible party's strict liability. It explicitly states that "all claims for removal costs or damages shall be presented first to the responsible party." 33 U.S.C. § 2713(a). Only if the responsible party denies the claim or fails to settle it within 90 days may the claimant then sue "the responsible party or guarantor." 33 U.S.C. § 2713(c)(2). Failure to comply with the OPA's claims presentment requirement destroys subject matter jurisdiction and mandates dismissal under Rule 12(b)(1). *Marathon Pipe Line Co. v. LaRoche Industries, Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996).

Plash Island has failed to present its claims to a responsible party under the OPA and thus lacks standing under the OPA to bring a civil lawsuit against any defendant for damages under the OPA. The Court should therefore dismiss Plash Island's economic loss claims under Rule 12(b)(1) for lack of jurisdiction and 12(b)(6) for failure to state a claim.

14

c.   **The OPA Forecloses Claims Against Those Who Are Not Responsible Parties Under the OPA**

The comprehensive and exclusive OPA remedies preclude any claim against any defendant that is not designated a responsible party pursuant to OPA. 33 U.S.C. § 2702(a). Under the OPA, only the executive branch of the United States Government can designate responsible parties. U.S.C. § 2714(a). When a spill occurs, the Coast Guard designates the responsible party who is strictly liable for recovery costs and economic damages. 33 C.F.R. § 136.305. *See also Gabarick*, 623 F. Supp. 2d at 744 ("When an oil spill occurs on U.S. navigable waters, the Coast Guard determines the source of the discharge and notifies a responsible party for that source. A responsible party for a vessel from which oil is discharged is strictly liable for removal costs and damages"). Because Dril-Quip is not a responsible party under the OPA, Dril-Quip may not be sued under the OPA. And because the OPA provides  Plash Island's exclusive federal remedy for economic loss damages resulting from an oil spill, the Court must dismiss Plash Island's economic loss claims against Dril-Quip pursuant to Rule 12(b)(6). *Gabarick*, 623 F.Supp.2d at 750-51; *Settoon Towing*, 2009 WL 4730971, at *3.

V.   **The Economic Loss Rule Bars Plash Island's Claims**

Even if the OPA did not preempt Plash Island's claims, the economic loss rule under federal maritime law and Louisiana law would bar those claims. A plaintiff cannot recover under general maritime law for economic loss absent physical damage to a proprietary interest. *See Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927). "It is unmistakable that the law . . . does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit." *In re Taira Lynn*

15

*Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006); *see also Reserve Mooring, Inc. v. Am. Commercial Barge Line, LLC*, 251 F.3d 1069, 1072 (5th Cir. 2001) ("[P]hysical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime tort."); *State of Louisiana v. M/V Testbank*, 752 F.2d 1019, 1022 (5th Cir. 1985) (same); *Kingston Shipping Co. v. Roberts*, 667 F.2d 34 (11th Cir. 1983) (same).

If OCSLA applies rather than federal maritime law, the result will not change because, as discussed, OCSLA would apply the same federal maritime law. Even if OCSLA's state law borrowing scheme applied, based on the allegations of the Complaint, the adjacent state law that OCSLA would borrow in this case would be Louisiana.[23]   43 U.S.C. § 1333(a)(2).  And Louisiana has an economic loss doctrine that is essentially the same as the federal maritime doctrine.  *PPG Indus., Inc. v. Bean Dredging*, 447 So. 2d 1058, 1062 (La. 1984).

Plash Island does not allege that it possesses a proprietary interest in any property that Dril-Quip allegedly damaged.  The Court should therefore dismiss its claims for economic loss under Rule 12(b)(6).

## VI.     Plash Island Fails to State a Negligence Claim Against Dril-Quip

Even if  Plash Island's claim under Count II were not deficient under the *Twombly-Iqbal* pleading standard, it would not state a claim under maritime or Alabama negligence law against Dril-Quip because the alleged harm to Plash Island was too thinly connected to Dril-Quip's activities to create a duty to them.  *See In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 211-13 (5th Cir. 2010)(connection between river dredging and collapse of

---

[23]Complaint at ¶¶ 20, 29.

16

New Orleans levees too attenuated to be foreseeable); *Lloyd's Leasing Ltd. v. Conoco*, 868 F.2d 1417, 1448-49 (5th Cir. 1989)(type of onshore damage from oil spill 70 miles away alleged by plaintiff not reasonably foreseeable as matter of law); *Consolidated Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987)(insufficient connection between dredging that ruptured gas pipeline and damages at aluminum processing plan from gas supply interruption to extend duty from dredging company to plant)(maritime law); *Jennings v. BIC Corp.*, 181 F.3d 1250, 1257 (11th Cir. 1999)(child's *purchase* and misuse of cigarette lighter beyond reasonable scope of risk to create a duty on part of manufacturer)(Alabama law). The *Lloyd's Leasing* case especially militates against the existence of a duty here because it reviewed the foreseeable consequences of an oil spill, which did not extend to losses suffered by businesses and homes. *See* 868 F.2d at 1449.

### VII.   Plash Island Fails to State a Claim Against Dril-Quip for Strict Liability Resulting from Abnormally Dangerous Activity

Plash Island's claim under count III does not state a claim for ultrahazardous activity. "An ultrahazardous activity is one that allows the imposition of strict liability, for it is an activity which cannot be performed safely even in the absence of negligence and with the exercise of all reasonable care." *Clark v. Container Corp. of America, Inc.*, 936 F.2d 1220, 1225 (11th Cir. 1991). Neither the Eleventh Circuit nor its parent, the Fifth, recognizes drilling as an ultrahazardous activity. Indeed, in Alabama the doctrine "has been limited primarily to blasting cases." *E. S. Robbins Corp. v. Eastman Chemical Co.*, 912 F.Supp. 1476, 1489 (N.D. Ala. 1995). Moreover, courts that recognize strict liability to control hazardous or abnormally dangerous activity held that the activity must "pose . . . some physical, rather than economic, danger to persons or property in the area," and "[l]iability

for engaging in such activity . . . 'is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.'" *Great Lakes Dredging & Dock Co. v. Sea Gull Operating Corp.*, 460 So. 2d 510, 513 (Fla. Dist. Ct. App. 1984)(citing Restatement (Second) of Torts §§519, 520 (1976)); *Cf. Harper v. Regency Devel. Co.,* 399 So. 2d 248, 253 (Ala. 1981)(strict liability arises out of intrinsic danger of activity and "the risk of harm . . . to those in the vicinity"); *see also St. Joe Co. v. Leslie*, 912 So.2d 21, 24 n. 1 (Fla. Dist. Ct. App. 2005)(physical harm required).  Dril-Quip's manufacture, sale and/or installation of the Macondo wellhead posed no risk of physical harm to Plash Island, and the kind of harm posed by the danger of offshore drilling does not include interference with the development of commercial real estate hundreds of miles away from the drillsite.  In fact, this claim closely resembles *Great Lakes*, in which a hotel sued for economic losses allegedly caused by the noise created by a nearby rock crushing machine.  The court noted that there was no physical harm threatened to persons or property at the hotel and that its interests were outside the scope of the risk of harm to those in the immediate vicinity of the machine. *See* 460 So. 2d at 513.

## VIII.  Plash Island Fails to State a Product Defect Claim on Which Relief May Be Granted Against Dril-Quip

As a matter of law, the alleged injury Plash Island's product defect claim is too remote from Dril-Quip's manufacture of the wellhead to permit a finding of legal cause.  Pleading and proof of legal cause are required in a maritime or Louisiana product defect action.  *See, e.g., Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992)(maritime law); *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997)(construing Louisiana Product Liability Act, La. Rev. Stat. Ann. §9:2800, 54 (West

1991)).  A but-for cause may be determined not to be proximate because of a break in the natural flow of events caused by the acts of others, *see, e.g., id.* at 929; *Graham v. Amoco Oil Co.,* 21 F.3d 643, 648-49 (5th Cir. 1994)(quoting *Sutton v. Duplessis,* 584 So.2d 362, 365 (La. Ct. App. 1991)), or simply because public policy dictates that liability not extend to every remote consequence of an arguably causal sequence.  *See, e.g., Roberts v. Benoit,* 605 So. 2d 1032, 1054 (La. 1991); *PPG Indus., Inc. v. Bean Dredging,* 447 So. 2d 1058, 1061 (La. 1984)(no liability for economic loss outside scope of duty to use reasonable care in dredging).

Both sets of considerations may be found here.  Dril-Quip furnished a piece of machinery–the wellhead–to BP.[24] Plash Island itself has pleaded myriad acts, omissions and faults on the part of multiple defendants, including the failure of the blowout preventer, the very purpose of which was to forestall adverse consequences from any problems occurring in the drilling and completion process, plus the intervening actions of wind, wave, subsea current, and the actions of those parties charged with responsibility for spill cleanup.[25] Plash Island's alleged injury is simply "beyond the scope of any fair assessment of the danger created" by any defect in Dril-Quip's wellhead.  Accordingly, no valid product defect claim has been stated against Dril-Quip, and the count that alleges one should be dismissed.

---

[24]*See* Complaint at ¶30.

[25]*See id.* at ¶¶202, 211, 238.

**IX.    Alternatively, The Court Should Require Plash Island to File a More Definite Statement Detailing the Facts, if Any, That Support Its Claims Against Dril-Quip**

In the alternative to dismissal, given the lack of specific allegations against Dril-Quip, the Court should require Plash Island to file a more definite statement of its pleading pursuant to Rule 12(e).  The Complaint fails to allege clearly those acts of Dril-Quip which support any of  Plash Island's claims against Dril-Quip.  Additionally, its use of the collective term "Defendants" makes it impossible to ascertain which Defendant did what.  The combination of minimal facts and multiple theories against many defendants means that Dril-Quip and the other Defendants cannot respond without risking waiver of defenses on the one hand or wasted effort and inadvertent admissions on the other. The remedy for such indistinctness is a motion under Rule 12(e), *see*, e.g., *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999), and the ripple effect of imprecise pleading in the form of cost to both litigants and the court system has been well-documented. *See, e.g., Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 981-84 (11th Cir. 2008).  Therefore, if the court does not dismiss Plash Island's claims, it should require Plash Island to file a more definite statement of its claims pursuant to Rule 12(e).  At a minimum, such statement should specify a theory of liability against Dril-Quip, together with the facts that support it.

WHEREFORE, Dril-Quip respectfully requests that the Court dismiss all Plash Island's claims against Dril-Quip pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), or, in the alternative, require a more definite statement pursuant to Rule 12(e), specifying a theory or theories of liability and the facts that support it/them.

Respectfully Submitted,


/s/ Neal D. Moore, III
Neal D. Moore, III
Larry Young, Jr.
*Attorneys for Third Party Defendant, Dril-Quip, Inc.*

OF COUNSEL:
FERGUSON, FROST & DODSON, LLP
2500 Acton Road, Suite 200
Birmingham, Alabama 35243
(205) 879-8722 – telephone
(205) 879-8831 – telecopier


## CERTIFICATE OF SERVICE


I hereby certify that the foregoing document has been served on all counsel of record, according to the Federal Rules of Civil Procedure, this 1st day of March, 2011, addressed as follows:

M. Shane Lucado
Lucado Law Firm LLC
One Perimeter Park South, Suite 125 S
Birmingham, Al. 35243
Fax No. (205) 278-0030

*Attorney for Third-Party Plaintiff*

John M. Johnson, Esq.
Adam K. Peck, Esq.
William H. Brooks, Esq.
Marchello D. Gray, Esq.
LIGHTFOOT, FRANKLIN & WHITE, LLC
400 North 20th Street
Birmingham, Alabama 35203

21

Richard C. Godfrey, Esq.
James Andrew Langan, Esq.
Kristopher Ritter, Esp.
KIRKLAND & ELLIS, LLP
300 North LaSalle
Chicago, Illinois 60654

Jeffrey Clark
Aditya Bamzai
KIRKLAND & ELLIS, LLP
655 Fifteenth St., N.W.
Washington, DC 20005-5793

*Attorneys for BP, PLC, BP America, Inc.,
BP Exploration & Production, Inc., BP
America Production Company, and BP
Products North America, Inc.*

Joel M. Kuehnert, Esq.
Sid J. Trant, Esq.
R. Thomas Warburton, Esq.
BRADLEY, ARANT, BOULT,
 CUMMINGS, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203

James J. Dragna, Esq.
BINGHAM MCCUTCHEN
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106

Ky E. Kirby, Esq.
Michael B. Wigmore, Esq.
Warrant Anthony Fitch, Esq.
BINGHAM MCCUTCHEN
2020 K Street, NW
Washington, DC 2006-1806

*Attorneys for Anadarko Petroleum Corporation,
Anadarko E&P Company, LP, MOEX Offshore
2007 LLC, and MOEX USA Corporation*

Blane H. Crutchfield, Esq.
Douglas L. McCoy, Esq.
HAND ARENDALL, LLC
Post Office Box 123
Mobile, Alabama 36601

*Attorneys for Transocean Offshore Deepwater
Drilling, Inc., Transocean Deepwater Inc., Transocean
Holdings, LLC and Triton Asset Leasing GMBH*

Hugh E. Tanner
MORGAN, LEWIS & BOCKIUS, L.L.P.
1000 Louisiana
Suite 4000
Houston, Texas 77002-5007

*Attorneys for M-I, LLC*

/s/ Neal D. Moore, III
OF COUNSEL

23

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SYNOVUS BANK,                              §
        Plaintiff,                    §
                                      §
v.                                         §    CIVIL ACTION NO. CV-2010-90218.00
                                      §    [JURY TRIAL REQUESTED]
PLASH ISLAND RESORT, LLC, KEITH            §
ROTENBERRY; LEWIS M. LOCKHART;             §
RICHARD D. ROWE; NIOLAOS MANKIDES;         §
RICKEY L. LOCKHARD; WILLIAM R. IVEY;       §
MICHAEL W. McCAIN; CHRISTOPHER             §
ANDREW YARBOROUGH; ESTATE OF               §
GARY L. MARCRUM, SR.; DONA S.              §
MARCRUM, ADMINISTRATOR; and                §
MARCRUM DEVELOPMENT, LLC,                  §
        Defendants.                   §

---

PLASH ISLAND RESORT, LLC,                  §
                                      §
        Defendant/Third Party Plaintiff, §
                                      §
v.                                         §
                                      §
BP P.L.C.; BP AMERICA INC.; BP PRODUCTS    §
NORTH AMERICA INC.; BP AMERICA             §
PRODUCTION COMPANY; BP EXPLORATION         §
& PRODUCTION INC.; ANADARKO                §
PETROLEUM CORPORATION; ANADARKO            §
E&P COMPANY, LP; MOEX OFFSHORE             §
2007, LLC; TRANSOCEAN LTD.;                §
TRANSOCEAN DEEPWATER, INC.;                §
TRANSOCEAN OFFSHORE DEEPWATER              §
DRILLING, INC.; TRANSOCEAN HOLDINGS,       §
LLC; TRITON ASSET LEASING GMBH;            §
HALLIBURTON ENERGY SERVIES, INC.;          §
M-I, LLC; DRIL-QUIP, INC.; CAMERON         §
INTERNATIONAL CORPORATION *F/K/A*          §
COOPER CAMERON CORPORATION;                §
JOHN AND JANE DOES A-Z; and                §
CORPORATIONS A-Z                           §
                                      §
        Third Party Defendants.       §

1


EXHIBIT
A

---

**AFFIDAVIT OF JERRY BROOKS**

---

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF HARRIS** | § |

BEFORE ME, the undersigned authority, on this day personally appeared Jerry Brooks, a person known to me to be a credible person, who after first being by me duly sworn, deposes on oath and states as follows:

1. "My name is Jerry Brooks. I am over the age of 18 and am competent to make this affidavit. I have never been convicted of a felony or a crime involving moral turpitude. I have personal knowledge of the facts contained in this affidavit and those facts are true and correct.

2. I am a Vice President and the Chief Financial Officer for Dril-Quip, Inc. I am familiar with the corporate structure of Dril-Quip and its activities, interests, and customers in states other than Texas. Dril-Quip, Inc. is a Delaware corporation with its principal place of business in Texas. Dril-Quip, Inc. does not own any real or personal property in Alabama, does not maintain an office in Alabama, has no employees in Alabama, does not regularly sell any products to citizens of Alabama, does not provide any regular services to citizens of Alabama, does not specifically target Alabama residents with any marketing or sales materials, does not engage in a persistent course of conduct in Alabama, and does not derive substantial revenue from Alabama. Dril-Quip, Inc. only does business with Alabama residents on an occasional and sporadic basis.

3. I am also familiar with Dril-Quip's work related to the design and manufacture of the subsea wellhead and related equipment that was sold to BP and used in connection with the drilling operations performed by the *Deepwater Horizon*. I am also familiar with the services provided aboard the *Deepwater Horizon* by a Dril-Quip, Inc. service technician in assisting with the installation of the subsea wellhead and related equipment. Dril-Quip, Inc. designed and manufactured the wellhead and related equipment in Texas. Dril-Quip, Inc. provided the service technician services on the *Deepwater Horizon* in the Gulf of Mexico. Dril-Quip, Inc. did not perform any services or manufacture any product with respect to the *Deepwater Horizon*, or the Macondo well, in Alabama.

Further affiant sayeth not"

_Jerry Brooks_

Jerry Brooks

SUBSCRIBED AND SWORN TO BEFORE ME on this the 25th day of February, 2011.

_Denise K. Cook_

Notary Public in and for the State of Texas

**DENISE K. COOK**
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
**JUNE 30, 2011**

2